DAVID A. HUBBERT
Deputy Assistant Attorney General

E. CARMEN RAMIREZ
(DC Bar 975331)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, DC 20044-0683
Tel: (202) 616-2885
FAX: (202) 307-6531
E.Carmen.Ramirez@usdoj.gov
Western.Taxcivil@usdoj.gov

*Counsel for the United States*

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENDELL LANG,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, INCLUDING PHILIP A. DOYLE, in his official capacity and personally,<br><br>Defendants. | Case No. 3:23cv2260-RBM-DEB<br><br>DEFENDANT THE UNITED STATES' MOTION TO DISMISS<br><br>Hearing date:<br>Monday, October 7, 2024<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

# TABLE OF CONTENTS


I. BACKGROUND ........ 1

A. Section 7345, the "Passport Statute" ........ 1

B. Factual background and allegations ........ 3

C. Legal Claims ........ 4

II. ARGUMENT ........ 6

A. The Complaint has not been properly served. ........ 6

B. The suit should be dismissed, even if it had been properly served. ........ 7

i. Standard for review ........ 7

ii. Mr. Doyle is not a proper defendant. ........ 8

a) Section 7345 does not authorize suit against Mr. Doyle. ........ 8

b) The ADEA does not authorize suit against Mr. Doyle either. ........ 10

c) Mr. Lang cannot bring a Bivens claim against Mr. Doyle. ........ 11

iii. Mr. Lang's claims against the United States also fail. ........ 15

a) Mr. Lang cannot plausibly allege that § 7345 is unconstitutional. ........ 15

1. Section 7345 is consistent with due process. ........ 16

2. The remaining constitutional claims also fail. ........ 21

b) Mr. Lang fails to allege a proper age discrimination claim against the United States. ........ 22

c) Mr. Lang cannot obtain damages against the United States. ........ 23

III. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) ....................14

*Aguinaldo v. Yee*, 2024 U.S. Dist. LEXIS 92447 (D. Haw. May 23, 2024) ..........12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 8I

*Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903 (9th Cir. 2003) ....12

*Bivens v. Six Unknow Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)....................14

*Butz v. Economou*, 438 U.S. 478 (1978)....................12

*Califano v. Aznavorian*, 439 U.S. 170 (1978) ....................17

*Capp v. Cnty. of San Diego*, 940 F.3d 1046 (9th Cir. 2019) ....................8

*Carlson v. Green*, 446 U.S. 14 (1980) ....................11

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010) .........8

*Davis v. Passman*, 442 U.S. 228 (1979) ....................14

*Dunn & Black P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ....................10

*Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002) .................... 17, 18, 20

*Franceschi v. Yee*, 887 F.3d 927 (9th Cir. 2018)....................17

*Franklin v. United States*, 49 F.4th 429 (5th Cir. 2022).................... 16, 18, 19

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996)............18

*Freedom to Travel Campaign*, 82 F.3d 1431 (9th 1996)....................21

*Fry v. Malaragno*, 939 F.2d 832 (9th Cir. 1991)....................12

*Gilbert v. DaGrossa*, 756 F.2d 1455 (9th Cir. 1985) ....................9

*Giles v. San Joaquin Valley Rehab. Hosp.*, 2023 U.S. Dist. LEXIS 121567 (E.D. Cal. July 13, 2023).................... 11, 23

*Haig v. Agee*, 453 U.S. 280 (1981) ....................16

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................13

*Hartman v. Moore*, 547 U.S. 250 (2006) ....................11

*Hernadez v. Comm'r*, 490 U.S. 680 (1989) ....................19

*Hughes v. United States*, 953 F. 2d 531 (9th Cir. 1992) ....................9

*Hutchinson v. United States*, 677 F.2d 1322 (9th Cir. 1982) ....................13

*Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266 (9th Cir. 1982) ....................8

*Landon v. Ply-Gem Windows*, 2024 U.S. Dist. LEXIS 6236 (W.D. Wash. Jan. 11, 2024) .................... 11, 23

*Maehr v. United States Dep't of State*, 5 F.4th 1100 (10th Cir. 2021) .................... 9, 19

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ....................13

*Ploof v. IRS*, 2016 U.S. Dist. LEXIS 72799 (N.D. Cal. May 24, 2016) ....................9

*Ross v. Bolin*, 2022 U.S. Dist. LEXIS 62037 (E.D. Cal. Apr. 1, 2022) ....................11

*Rowen v. Comm'r*, 156 T.C. 101 (2021) ....................10

*Shiraishi v. United States*, 2011 U.S. Dist. LEXIS 111065 (D. Haw. Sep. 27, 2011). ....................13

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006 (9th Cir. 2013) ....................8

*United States v. Guest,* 383 U.S. 745 (1966) ....................16

*Wages v. IRS,* 915 F.2d 1230 (9th 1990) ....................14

*Walton v. United States*, 2024 U.S. Dist. LEXIS 10854 (C.D. Cal. June 18, 2024) ....................24

*Worthy v. Herter*, 270 F.2d 905 (D.C. Cir. 1959) ....................17

*Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017) ....................14

**Statutes**

5 U.S.C. § 702 .......... 9
22 U.S.C. § 211a .......... 10
22 U.S.C. § 2714a .......... 2
26 U.S.C. § 7345 .......... passim
26 U.S.C. § 7433 .......... 23, 24
28 U.S.C. § 1331 .......... 9
29 U.S.C. § 621 .......... 10
29 U.S.C. § 623 .......... 10

**Regulations**

22 C.F.R. § 51.60 .......... 2
22 C.F.R. § 51.62 .......... 2
26 C.F.R. § 301.7433-1 .......... 24

**Other Authorities**

Fed. R. Civ. P. 4 .......... 6, 7
Fed. R. Civ. P. 12 .......... 1
Internal Revenue Manual .......... 2

# MOTION

The United States of America, the defendant, respectfully moves to dismiss this suit pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). The United States also seeks to preserves its rights under Rule 12(b)(4).[1]

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

### A. Section 7345, the "Passport Statute"

Congress has provided that taxpayers who accumulate substantial federal tax debt may lose their passports. Kendall Lang is one such taxpayer. He says his passport expired in 2020, and that he has been unable to renew it due to his problems with the IRS. (Dkt. 1 (complaint) at 3.) Mr. Lang, however, failed to comply with a settlement agreement that could have allowed him to restore his passport eligibility. Instead, he brought this suit against the United States and Philip A. Doyle, a Department of Justice attorney who litigated a tax dispute against him, and who he apparently blames for his passport problems.

The statute at the heart of this dispute is 26 U.S.C. § 7345, "Revocation or denial of passport in case of certain tax delinquencies." The statute tasks the IRS

---

[1] Because plaintiff is pro se, the United States is excused from the Court's usual requirement that the parties meet and confer regarding motions. As a courtesy, the United States attempted to contact him by telephone on August 21, 2024, and left a message, but has not heard back.

with "certifying" that a taxpayer meets certain criteria for "seriously delinquent tax debt." The IRS has no ability to issue or deny passports, but § 7345 directs the Secretary of the Treasury to inform the State Department of the certification. A related provision in Title 22 authorizes the State Department to deny new passports to individuals who are currently certified under § 7345, and to revoke existing passports. 22 U.S.C. § 2714a(e), 22 C.F.R. §§ 51.60(a)(3) and 51.62(a)(1).

Only a limited subset of delinquent taxpayers are subject to certification. Section 7345(b)(1) provides that only assessed liabilities greater than $50,000 (indexed for inflation) qualify. Under § 7345(b)(2), a taxpayer cannot be certified unless the IRS has already attempted to collect the debt by recording a lien or issuing a levy, processes that themselves provide taxpayers certain appeal rights.

The statute also contains exceptions. For example, taxpayers who are paying down their debts pursuant to an approved installment plan are not subject to certification, even if the current balance exceeds $50,000. 26 U.S.C. § 7345)b)(2)(A). The IRS also makes certain administrative exceptions for taxpayers who can show they are experiencing economic hardship or meet other criteria. *See Int. Rev. Manual* 5.19.25.5, Discretionary Exclusions from Certification, *available at* https://www.irs.gov/irm/part5/irm_05-019-025#idm140149669737760. A taxpayer can obtain a reversal of certification by, for example, reaching a formal agreement with the IRS to compromise debt and complying with the terms of the

agreement. *See* 26 U.S.C. § 7345(c)(2)(C).

**B. Factual background and allegations**

Mr. Lang has substantial tax debts that the United States has been attempting to collect those debts for years. In 2008, the United States obtained a judgment against him for delinquent taxes in a case filed in the Southern District of California. (*See United States v. Lang et al.*, Case No. 3:06-cv-02648-JM-WVG (S.D. Cal.) Dkts. 77 and 79 (the "California judgment").) In 2022, a court in the District of Puerto Rico issued an order (which Mr. Lang calls a "Final Disposition Order") allowing the government to garnish his salary to pay the California judgment. (Dkt. 1 at 4, ¶¶ 4-5; Dkt. 1-1 at 1-3 (garnishment order)).

However, the debt was still not satisfied. On April 3, 2023, Mr. Lang and the United States reached a settlement under which Mr. Lang agreed to pay $150,000 towards the judgment. (Dkt. 1 at 5 ¶ 6; Dkt. 1-1 at 7-8.) Attachments to the complaint show Mr. Doyle was involved in negotiating the agreement. (*See, e.g.*, Dkt. 1-2 at 10 (acceptance letter, referring questions to Mr. Doyle).)

Mr. Lang did not comply with the settlement. It appears he did not have the money he had agreed to pay, but hoped to earn it from various business endeavors overseas. (Dkt. 1 at 5 ¶ 8 and 6-7 ¶ 15.) However, his passport had expired in 2020 and, due to his tax problems, he had been unable to renew it. (*Id.* at 3 ¶¶ 1-2.) Although his inability to get a passport predated the settlement agreement, he

repeatedly suggests that the United States and/or Mr. Doyle "maliciously" prevented him from traveling. (*Id*. at 7 ¶ 15.) He also alleges that the United States somehow "violated the terms" of the garnishment order by "requiring" him to enter the settlement. (*Id.* at 5 ¶ 6.) But he does not allege any facts suggesting he entered the agreement against his will, nor point to any specific provision in the order the agreement might violate.

For example, he says "the only possible way" he could pay the settlement would be by earning a signing bonus from a potential employer, which turned on traveling abroad to close a deal with a potential investor. (*Id*. at 5 ¶ 7.) He does not explain why he could only find work in a narrow field ("vertical farming" (Dkt. 1-2 at 11)) and only overseas. He says the bonus arrangement was outlined in a February 15, 2023, term sheet from the prospective employer. (Dkt. 1 at 5 ¶7.) But he does not say that this contingency was incorporated in the agreement in any way. Indeed, he attaches a May 4, 2023, email to Mr. Doyle, after the settlement was reached, stating that "I realize and still agree that you have no obligation to release the hold on my passport." (Dkt. 1-2 at 17.)

**C. Legal Claims**

The complaint appears to assert four counts for relief, plus an unnumbered claim labeled "Damages and Immunity Defense" that Mr. Lang suggests amounts to "a Bivens violation" by Mr. Doyle.

Count 1 purportedly asserts violations of the First Amendment, and the Due Process Clause of the Fifth Amendment. It suggests that by preventing Mr. Lang from obtaining a passport, the government has improperly curtailed his supposedly fundamental right to travel (i.e., to travel abroad), which prevents him from exercising other rights. Similarly, Count 2 claims the government violated the Thirteenth Amendment's prohibition on involuntary servitude, because Mr. Lang's inability to renew his passport "forces [him] to choose between his freedom of movement and his obligation to the Defendant." (Dkt. 1 at 9 ¶ 29.)

Count 3 suggests that the government violated the Age Discrimination in Employment Act of 1967 (the "ADEA"). Mr. Lang contends that the loss of his passport amounts to age discrimination because the government "knows that [Mr. Lang] is 61 years of age" and is therefore "unlikely to have other opportunities for employment" (aside, apparently, from opportunities abroad). (Dkt. 1 at 10 ¶ 34.)

Count 4 seeks punitive damages to punish the government for its supposedly improper interference with his passport. Finally, the unnumbered last claim, labeled "Damages and Immunity Defense" also seeks damages. It asserts that Mr. Doyle intentionally precluded Mr. Lang from obtaining employment and put him "in a predicament called the impossibility of performance" causing "physical and emotional harm, as well as economic loss." (Dkt. 1 at 12 ¶ 46 et seq.)

Mr. Lang's prayer for relief seeks several remedies for these alleged wrongs, including: i) a declaration that the revocation of his passport violated his Fifth Amendment due process rights; ii) compensatory damages for his alleged loss of employment and investment opportunities; iii) punitive damages; iv) additional damages for emotional distress; v) a finding that his payments to date have satisfied his tax debts; and vi) unspecified "Injunctive relief." (Dkt. 1 at 18.)

## II. ARGUMENT

### A. The Complaint has not been properly served.

Improper service is grounds for dismissal under Rule 12(b)(4), if the party to be served raises the issue before filing a responsive pleading. To date, Mr. Lang has not properly served the United States. In general, a plaintiff must serve the opposing party within 90 days "after the complaint is filed." Fed. R. Civ. P. 4(m). Mr. Lang filed his complaint December 12, 2023, more than 90 days ago. The United States recognizes that the Clerk of Court did not issue a summons until Mr. Lang paid the filing fee on June 26, 2024 (Dkts. 5 and 6), but Mr. Lang has not requested an extension of time on that basis or any other. The United States therefore seeks to preserve its right to challenge service.

To the extent Mr. Lang has attempted service on Mr. Doyle, it was incomplete. Rules 4(i)(1), (2) and (3) provide detailed requirements for serving the United States and its employees. These include sending the complaint and

summons to the United States Attorney for the district where the suit is filed, and to the Attorney General, and serving the employees by registered or certified mail, as well as additional procedures for employees sued in their individual capacities. If a plaintiff has served the employee but not the United States, or vice versa, the court must allow a reasonable time to correct the error. Fed. R. Civ. P. 4(i)(4).

The last page of the complaint suggests that Mr. Lang served the complaint (which he calls a "Motion") on Mr. Doyle via U.S. mail and email. (Dkt. 1 at 19.) That is not proper service because, for starters, he did not (and, at the time, could not) include the summons. After the summons issued, Mr. Lang sent Mr. Doyle a copy of the summons and complaint via certified mail on June 26, 2024. But he has not shown he has served either the United States Attorney or the Attorney General, without which service on Mr. Doyle would be incomplete.

**B. The suit should be dismissed, even if it had been properly served.**

**i. Standard for review**

A complaint may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Rule 12(b)(6) dismissal is warranted here because the complaint lacks a cognizable legal theory or makes insufficient factual allegations to support its theory. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). A complaint has facial plausibility when it pleads factual content allowing the court to draw the reasonable inference that the

defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009). Naked assertions devoid of further factual enhancement are insufficient, and a court need not accept as true a legal conclusion couched as a factual allegation. *Id.*; *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]"). Pro se pleadings are liberally construed. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019). However, the Court should not act as an advocate or supply essential elements of a claim not pled. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**ii. Mr. Doyle is not a proper defendant.**

*a) Section 7345 does not authorize suit against Mr. Doyle.*

Mr. Lang purports to sue Mr. Doyle in both his official and personal capacities. But Mr. Lang does not allege any actions Mr. Doyle took outside his role as a Department of Justice attorney. Mr. Lang must show a waiver of sovereign immunity against the government to sue Mr. Doyle in his official capacity as a federal employee, if he seeks a judgment that would bind the United States. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("[A] suit against IRS employees in their official capacity is essentially a suit against the United

States.") Consequently, "absent express statutory consent to sue, dismissal is required." *Id.* (citations omitted).

Mr. Lang posits jurisdiction under 28 U.S.C. § 1331, which is a general jurisdictional provision that does not provide a waiver of sovereign immunity to sue the United States. *See Hughes v. United States*, 953 F. 2d 531, 539 n.5 (9th Cir. 1992). It grants jurisdiction only where the government has consented to suit. *Id.; Ploof v. IRS*, 2016 U.S. Dist. LEXIS 72799, at *3 (N.D. Cal. May 24, 2016).[2]

Section 7345 itself offers a limited sovereign immunity, allowing taxpayers to sue in district court on the grounds that the IRS's certification was erroneous (in the sense that he is ineligible for certification for any reason listed in the statute) or that the IRS failed to reverse certification when required to. 26 U.S.C. § 7345(e). Mr. Lang does not say his certification was erroneous. Read generously, he alleges that the certification violated his constitutional rights. If § 7345 were unconstitutional, "certification . . . would be inconsistent with law and therefore erroneous." *Rowen v. Comm'r*, 156 T.C. 101, 111 (2021).

---

[2] At least one court has found that 28 U.S.C. § 1331 provides jurisdiction to address constitutional challenges to certification, *in conjunction with* the waiver of sovereign immunity in the Administrative Procedures Act, 5 U.S.C. § 702. *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021). But Mr. Lang did not invoke the APA, and his constitutional claims would fail either way.

However, while § 7345 may provide jurisdiction for constitutional claims against the United States, it does not authorize suit against Mr. Doyle. Immunity waivers must be explicit, and are strictly construed in favor of the sovereign. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007). Section 7345 allows taxpayers to "bring a civil action against *the United States*" (or the IRS Commissioner, if suing in Tax Court), and provides a specific remedy: if a court determines certification was erroneous, it may order the Secretary of the Treasury to inform the State Department. 26 U.S.C. § 7345(e) (emphasis added). It does not authorize suits against an individual Department of Justice attorney, who has no power to issue passports. *See* 22 U.S.C. § 211a (generally limiting authority to issue passports to the State Department). Any passport claims against Mr. Doyle should be dismissed.

*b) The ADEA does not authorize suit against Mr. Doyle either.*

The ADEA bars employers, employment agencies, and labor organizations from discriminating on the basis of age by, for example, refusing to hire an older worker. *See* 29 U.S.C. § 623; *see also* 29 U.S.C. § 621 (discussing statute's purpose). Mr. Lang's theory appears to be that the loss of his passport is a particular hardship because, given his age, employers may be less likely to hire him than a younger worker. He does not offer any legal theory under which Mr. Lang might be liable for the downstream decision of an employer to hire a younger

worker instead of Mr. Lang. *See, e.g., Landon v. Ply-Gem Windows*, 2024 U.S. Dist. LEXIS 6236, at *6 (W.D. Wash. Jan. 11, 2024) (discussing requirements for an ADEA claim). But in any event, the ADEA limits civil liability to the employer, employment agency, or labor organization, not individual employees like Mr. Doyle. *See, e.g.*, *Giles v. San Joaquin Valley Rehab. Hosp*., 2023 U.S. Dist. LEXIS 121567, at *8-9 (E.D. Cal. July 13, 2023).

*c) Mr. Lang cannot bring a Bivens claim against Mr. Doyle.*

Mr. Lang's unnumbered final claim suggests that the United States and/or Mr. Doyle should also pay damages for a "Bivens violation." (Dkt. 1 at 12 ¶ 46 et seq.) Under *Bivens*, a plaintiff may sue federal agents to obtain monetary damages for constitutional violations, even without a statute specifically providing for damages. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

However, a *Bivens* remedy is available only in narrow circumstances. As relevant here, *Bivens* suits can only be maintained only against individual federal employees, not the governmental agency or entity that employs them. *See, e.g.*, *Ross v. Bolin*, 2022 U.S. Dist. LEXIS 62037, at *16, (E.D. Cal. Apr. 1, 2022), *citing F.D.I.C. v. Meyer*, 510 U.S. 471, 484-85, (1994). Furthermore, "*Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016). Any claim against a

federal employee like Mr. Doyle in his official capacity is deemed a claim against the United States. *See, e.g.*, *Aguinaldo v. Yee*, 2024 U.S. Dist. LEXIS 92447, at *6 (D. Haw. May 23, 2024), *citing Balser v. Dep't of Justice*, *Office of U.S. Trustee*, 327 F.3d 903, 907 (9th Cir. 2003).

That leaves claims against federal employees in their individual capacities, but those are also limited. Courts have repeatedly found absolute immunity for government attorneys like Mr. Doyle. *See, e.g., Butz v. Economou*, 438 U.S. 478, 516-17 (1978) ("[A]n agency attorney who arranges for the presentation of evidence … in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence."); *Fry v. Malaragno*, 939 F.2d 832, 836 (9th Cir. 1991) (finding IRS attorneys had absolute immunity).

The "touchstone" of such immunity is whether the attorney's actions are closely associated with the judicial process. *Fry*, 939 F.2d at 837. To the extent the complaint alleges anything at all about Mr. Doyle's conduct, it concerns his negotiation of the agreement that Mr. Lang and the United States reached to resolve the judgment obtained in the California litigation. The agreement was a direct result of Mr. Lang's initial tax dispute in this District, and the garnishment proceeding in the District of Puerto Rico through which the United States attempted to collect on the judgment. Courts have repeatedly extended absolute immunity to government attorneys for their post-litigation handling of a case. *See,*

*e.g.*, *Shiraishi v. United States*, 2011 U.S. Dist. LEXIS 111065, at *18 (D. Haw. Sep. 27, 2011). Otherwise, it would be all too easy for the party who has lost an underlying dispute with the United States to harass the governmental attorney with subsequent suits. *See id*.

More generally, government officials acting pursuant to their official positions enjoy qualified immunity and are insulated from suit if there are reasonable grounds to believe that the challenged action was appropriate, and the defendant acted in good faith. *Hutchinson v. United States*, 677 F.2d 1322, 1328 (9th Cir. 1982). This immunity shields defendants where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Fry*, 939 F.2d at 838 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Unless a plaintiff's claims include a violation of clearly established law, a defendant is entitled to dismissal before discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Mr. Lang cannot show any such violation here. Notably, the Supreme Court has found a *Bivens* remedy in only three situations, none of which concerns tax

collection, and has held that any expansion of the *Bivens* remedy is "disfavored."[3] *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857 (2017) (citation omitted).

Although the Ninth Circuit has not considered § 7345 specifically, it has already declined to recognize *Bivens* claims in other situations in the federal tax context. *See Adams v. Johnson*, 355 F.3d 1179, 1184 (9th Cir. 2004) (*Bivens* claim not available for alleged constitutional violations by IRS officials involved in assessing and collecting taxes due to comprehensiveness of remedies in the Internal Revenue Code); *Wages v. IRS,* 915 F.2d 1230, 1235 (9th 1990) ("…the remedies provided by Congress, particularly the right to sue the government for a refund of taxes improperly collected, foreclose a damage action under *Bivens*…").

Here, there is no basis to substantially expand *Bivens* to allows Mr. Lang to proceed on claims related to federal tax collection or the litigation and settlement of federal tax cases. When Congress drafted § 7345, it provided a vehicle to restore a taxpayer's passport eligibility in appropriate circumstances but did not choose to provide damages. The Court should not expand on the remedy Congress offered.

---

[3] *Bivens* itself recognized a Fourth Amendment claim for a warrantless arrest inside a home. *Bivens v. Six Unknow Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971). *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), recognized a Fifth Amendment equal protection claim in an employment context. *Carlson v. Green*, 446 U.S. 14, 23-25 (1980), recognized an Eighth Amendment claim against prison officials for deliberate indifference to an inmate's serious medical condition.

And even assuming *Bivens* remedies were allowed in the tax context, and that Mr. Doyle was not immune, Mr. Lang does not even allege that it was Mr. Doyle that caused him to lose passport eligibility. Mr. Lang says that he applied for a passport in "the spring of 2022" and was apparently denied before he and Mr. Lang finalized the April 3, 2023, agreement. (*See* Dkt. 1 ¶¶ 1-2, 6.) He knew that he was already certified when he entered the settlement agreement. Shortly after the United States agreed to the settlement, Mr. Lang acknowledged that "I realize and still agree that you have no obligation to release the hold on my passport." (Dkt. 1-1 at 15). The settlement might have given him the opportunity to resolve his tax problems and obtain reversal of his certification, had he complied with it, which he failed to do. That does not allow him to seek damages against Mr. Doyle.

**iii. Mr. Lang's claims against the United States also fail.**

*a) Mr. Lang cannot plausibly allege that § 7345 is unconstitutional.*

Mr. Lang suggests that the § 7345 regime violates the Fifth Amendment's due process clause, and the Thirteenth Amendment's Prohibition on involuntary servitude. (Dkt. 1 at 8-10.) He is incorrect. A long chain of precedents from the Supreme Court and elsewhere show that reasonable restrictions on international travel are permissible, and that § 7345 is reasonable.

**1. Section 7345 is consistent with due process.**

Mr. Lang's Fifth Amendment due process claim rests on the mistaken premise that there is a fundamental right to travel abroad that the government cannot limit or condition, at least through § 7345. The distinction between fundamental rights and rights that are merely aspects of the general right to liberty matters, because restrictions on fundamental rights are usually subject to strict scrutiny. *See, e.g., Franklin v. United States*, 49 F.4th 429, 434 (5th Cir. 2022) (rejecting challenge to § 7345). To survive strict scrutiny, a restriction must be narrowly tailored to serve a compelling state interest. *Id*. When a right is not fundamental, courts usually apply a lower standard. *See id*.

Mr. Lang relies on *United States v. Guest,* 383 U.S. 745, 758 (1966), which concerned a criminal conspiracy to interfere with a group of African-American citizens' "constitutional right to travel from one State to another[.]" *Id*. at 745, 758. While *Guest* characterized the right to travel as fundamental, it was referring to *interstate* travel. International travel is different. The Constitution does not mention any right to international travel, and the Supreme Court has long decided that "the freedom to travel outside the United States must be distinguished from the right to travel within the United States." *Haig v. Agee*, 453 U.S. 280, 306 (1981). While the right to travel *within* the United States is fundamental, the right to

international travel is "no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment[.]" *Haig,* 453 U.S. at 307.

Of course, the government cannot restrict foreign travel arbitrarily, or leave citizens without a way to challenge the restriction. But the government can regulate international travel for appropriate reasons, within the bounds of due process. *Haig*, 453 U.S. at 306-07.[4] Courts have upheld a variety of restrictions that burden, delay, and even prevent international travel. *See, e.g., id.* at 280 (denying passport on national security grounds); *Califano v. Aznavorian*, 439 U.S. 170, 171 (1978) (denying SSI benefits if the recipient leaves the country for more than a month); *Worthy v. Herter*, 270 F.2d 905, 913 (D.C. Cir. 1959) (denying passport for journalist who wished to travel to communist countries).

Because there is no fundamental right to international travel, any infringement on international travel contained in § 7345 is not subject to strict scrutiny. That said, judges considering passport restrictions have differed on whether they should apply rational basis review, meaning the restriction need only rationally relate to a legitimate government interest, or something higher. *See Eunique v. Powell*, 302 F.3d 971, 976 (9th Cir. 2002) (reasoning that a statute

---

[4] Indeed, even interstate travel can be regulated if appropriate. *See Franceschi v. Yee*, 887 F.3d 927 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 648 (2018) (rejecting challenge to suspension of delinquent state taxpayers' drivers' licenses).

would survive rational review if there was a "reasonable fit" between the governmental purpose and the means chosen to advance that purpose); *Franklin*, 49 F.4th at 435-36 (similar). An in-between level, "intermediate scrutiny," generally requires that a restrictive statute serve government interests that are important, not merely legitimate, and that the restriction be substantially related, not merely connected, to those interests. *Id.* at 436.

The Ninth Circuit has not ruled on § 7345, and so has not determined which standard applies. But it addressed a very similar statutory regime in *Eunique*, which upheld the denial of passports to applicants who owed child support payments. 302 F.3d at 976. There, one of the two judges in the majority found that the statute was "rationally related to a legitimate government interest" while the other applied intermediate scrutiny. 302 F.3d 976 n.8; *id.* at 976 (McKeown, J., concurring) (concluding that the statute "passes muster under intermediate scrutiny" because there is "both an important and substantial government interest" in child support). Similarly, in *Freedom to Travel Campaign v. Newcomb*, the Ninth Circuit applied something less then strict scrutiny to restrictions on travel to Cuba. 82 F.3d 1431, 1439 (9th Cir. 1996) ("Given the lesser importance of this freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for [] the ban").

In *Maehr*, the Tenth Circuit upheld § 7345, with two judges applying rational basis review, and the third concurring in the judgment but favoring intermediate scrutiny. 5 F4th at 1121 (because taxpayer had "not established a fundamental right of international travel" the "less-exacting standards of rational basis review" applied) and 1116 (Lucero, J., concurring) ("Intermediate scrutiny is the best way to remain faithful … Supreme Court caselaw and the role of international travel" in U.S. history). By contrast, in *Franklin*, the Fifth Circuit found it did not need to decide between rational basis review and intermediate scrutiny because "even under the higher standard of intermediate scrutiny, the [] passport-revocation scheme is constitutional." 49 F.4th at 437-38.

Here, the Court should find that § 7345 is constitutional under either standard. The United States' interest in collecting taxes "is undoubtedly an important one." *Franklin*, 49 F.4th at 437-38, *citing Hernadez v. Comm'r*, 490 U.S. 680, 699 (1989) ("It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid[.]") (int'l quotation omitted). The "passport revocation scheme is [] clearly connected to that goal." *Franklin*, 49 F4th at 438; *see also Hernandez*, 490 U.S. at 699 ("[E]ven a substantial burden would be justified by the broad public interest in maintaining a sound tax system." (quotations omitted). And § 7345 is appropriately limited. It applies only to a subset of taxpayers with serious debts "and provides several procedural safeguards

through both the tax process and, ultimately, through a cause of action should the certification itself be erroneous." *Id*. The statute thus serves a compelling interest, the collection of taxes, and is substantially related to that purpose.[5]

Mr. Lang may argue the statute is unconstitutional as applied to him, as opposed to unconstitutional on its face, because unlike other taxpayers he can only work abroad. He may say the passport restriction is uniquely burdensome. Not only would these challenges be meritless, he does not allege sufficient facts to support his assertion that he is incapable of working domestically. He certainly has not shown that the passport restriction would be unconstitutional even if he was so positioned. The *Eunique* majority paid little weight to the argument that the plaintiff had no success obtaining work in the U.S. The dissent noted that the plaintiff wished to meet with contacts in Peru who might offer paying work. 302 F.3d at 980 (Kleinfeld, J., dissenting). The majority did not discuss these plans, implicitly rejecting any suggestion this alleged limit on her employment opportunities violated fundamental rights.

---

[5] Although there is no need to meet the strict scrutiny standard, § 7345 would do so. As discussed above, the collection of taxes is compelling. Similarly, the statute is carefully tailored, targeting only taxpayers with serious tax debt that has already been assessed but remains due, despite the issuance of a lien or levy. The statute provides taxpayers notification, opportunities to obtain a reversal, and a vehicle to obtain judicial review. 26 U.S.C. § 7345 (b)(2), (d), and (e).

**2. The remaining constitutional claims also fail.**

Mr. Lang does not clearly explain the supposed First Amendment violation. It is true that "[w]hen a person's right to travel internationally is conditioned on the surrender of [] expressive or associational rights, the First Amendment is clearly implicated." *Freedom to Travel Campaign*, 82 F.3d 1431, 1441 (9th 1996). But Mr. Lang does not say the government restricted his passport because he engaged in any expressive conduct. At most, he may mean that losing his passport made it harder to communicate with business contacts overseas. But if that amounted to a First Amendment violation, "there are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." *Id.* (citations and quotations omitted).

The Thirteenth Amendment claim is not entirely clear. Mr. Lang appears to claim that he is "prevented from working … through gainful employment that requires international travel" which is "keeping him from being able to work and pay any amount [of his taxes]." (Dkt. 1 at 9 ¶ 30.) In other words, he alleges that the government is *preventing* him from working, not that it is forcing him into servitude. And even that allegation is implausible: he asserts that he cannot work domestically, but does not allege facts supporting that assertion.

In any event, his First and Thirteenth Amendment claims fail for the same reason as his Fifth Amendment due process theory. He has not shown that the

government unduly infringed on a fundamental right. The passport program easily passes constitutional review for the reasons discussed above.

*b) Mr. Lang fails to allege a proper age discrimination claim against the United States.*

Even if Mr. Lang brings his ADEA claim against the United States, and not Mr. Doyle, he would still fail. Mr. Lang does not allege that the United States discriminated against him in any employment context. At most his claim is that some unknown, non-party employers might possibly discriminate against him. But while he suggests he may have more employment opportunities abroad, he has not provided any specifics explaining why he cannot work in the United States; rather, his complaint suggests he is choosing to limit his employment opportunities to a specific field and non-U.S. employers.

In any event, he cannot challenge his passport certification under the ADEA. As discussed above, Congress provided two ways to challenge passport actions related to tax liabilities: a suit in district court against the United States to obtain an order directing that certification be reversed, or a suit in Tax Court against the Commissioner of the IRS for the same relief. 26 U.S.C. § 7345(e). The waiver of sovereign immunity for passport claims does not extend to any other action.

And even if a plaintiff could obtain a remedy for passport ineligibility through an ADEA claim, Mr. Lang cannot do so here. The statute requires the

exhaustion of specific administrative remedies, which includes filing a charge with the Equal Employment Opportunity Commission. *See* 29 U.S.C. § 626(d)(1). Mr. Lang does not allege he exhausted such remedies, which requires dismissal of his claim. *See, e.g., Landon v. Ply-Gem Windows*, 2024 U.S. Dist. LEXIS 6236, at *6 (W.D. Wash. Jan. 11, 2024) (dismissing ADEA claim where plaintiff failed to allege administrative exhaustion); *Giles*, 2023 U.S. Dist. LEXIS 121567 (similar).

*c) Mr. Lang cannot obtain damages against the United States.*

Mr. Lang's remaining claims seek damages. As discussed above, he seeks damages under *Bivens* but he cannot bring a *Bivens* suit against the United States, and cannot obtain damages from Mr. Doyle here. He appears to seek damages against the United States separately, under Count 4. (Dkt. 1 at 10-12). But he cannot prevail there, either.

With limited exceptions not relevant here, 26 U.S.C. § 7433 provides "the exclusive remedy" for taxpayers to recover damages caused by the wrongful actions of IRS personnel. Mr. Doyle is an employee of the Department of Justice, not the IRS. But to the extent Mr. Lang alleges that he sustained damages from the IRS's original certification, he has not and cannot show the certification was wrongful. As discussed above, the certification program is constitutional, and Mr. Lang does not allege that the IRS certified him without meeting § 7345's requirements, *e.g.*, he has not shown that he had paid down his liabilities, or that

the IRS certified him before issuing a lien or levy. To the contrary, the attachments to his complaint show that, at least at the time he breached the settlement agreement, he acknowledged that "you [Mr. Doyle] have no obligation to release the hold on my passport." (Dkt. 1-2 at 17).

Nor could he meet § 7433's requirements even if he had plausibly alleged wrongful conduct. For example, under § 7433(d)(1), a plaintiff must exhaust administrative remedies before bringing suit.[6] These include filing an administrative claim with the IRS before bringing suit, as detailed in 26 C.F.R. § 301.7433-1(d) and (e); *see also, e.g.*, *Walton v. United States*, 2024 U.S. Dist. LEXIS 108545, at *10 (C.D. Cal. June 18, 2024) (finding that court lacked subject matter jurisdiction to hear § 7433 claim because plaintiff had not properly exhausted her administrative remedies). Mr. Lang does not even acknowledge this requirement, let alone allege that he met it. His claim for damages cannot stand.

## III. CONCLUSION

For the reasons above, the suit should be dismissed.

---

[6] Mr. Lang does not cleraly allege when he was certified under § 7345, but it is possible any damages claim from wrongful certification, assuming otherwise viable, would be time-barred. *See* 26 U.S.C. § 7433(d)(3) (providing that claims must be brought within two years of accrual). The statute also concerns a mitigation provision that would limit Mr. Lang's damages, if any. 26 U.S.C. § 7433(d)(2).

DATED this 26th day of August, 2024,

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ *E. Carmen Ramirez*
E. CARMEN RAMIREZ
Trial Attorney, Tax Division
U.S. Department of Justice

*Counsel for the United States*

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing is made this August 26, 2024, via ECF, and on the following parties by United States mail. The mailing will be completed the next business day. The United States is also providing a copy via e-mail.

Kendell Lang
1155 Camino Del Mar, #521
Del Mar, CA 92014
kendall.lang@gmail.com

*Pro se*

*/s/ E. Carmen Ramirez*
E. CARMEN RAMIREZ
Trial Attorney, Tax Division
U.S. Department of Justice